MARTHA JAMES (Formerly MARTHA EDWARDS), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
James v. Commissioner
Docket No. 8616-76.
United States Tax Court
T.C. Memo 1980-99; 1980 Tax Ct. Memo LEXIS 484; 40 T.C.M. (CCH) 45; T.C.M. (RIA) 80099; March 31, 1980, Filed *484 Petitioner and her spouse filed their 1969 and 1970 joint income tax returns on April 18, 1973. Records supporting the business deductions claimed on the return were stolen. Petitioner's spouse worked away from home during 1970 and incurred certain travel expenses. Held, on the facts of this case, the travel expenses of petitioner's spouse that were incurred wile away from home were non-deductible personal living expenses since his employment was for an indefinite period of time. Held, further, petitioner adequately reconstructed the expenses for a part of the automobile travel but not for other claimed business expenses, therefore only the former are deductible as section 162 deductions. Held, further, petitioner failed to present any evidence with respect to her interest deductions claimed for 1969 and 1970, such deductions are therefore disallowed. Held, further, petitioner is not an innocent spouse for purposes of sec. 6013(e) since there were no omissions from income for either taxable year. Held, further, petitioner cannot revoke her joint return election once the period for filing returns has expired. Ladden v. Commissioner, 38 T.C. 53 (1962), *485 followed. Held, further, petitioner is liable for the sec. 6651(a) additon to tax. Bernard Susman, for the petitioner. Robert P. Edler, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined deficiencies in petitioner's Federal income taxes for the years 1969 and 1970, in the respective amounts of $2,954.72 and $3,508.15. Also determined are section 6651(a)[1] additions to the tax in the respective amounts of $126.23 and $409.60. Concessions having been made, the issues presented for our decision are as follows: *488 (1) Whether petitioner's former spouse was away from home for purposes of section 162(a)(2) during all or part of taxable year 1970; (2) Whether expenses incurred during 1969 and 1970 in conjunction with the business activities of petitioner's former spouse are deductible as ordinary and necessary business expenses under section 162 and after the application of section 274; (3) Whether certain amounts were paid as interest on various debts in taxable years 1969 and 1970 and properly deductible under section 163; (4) Whether petitioner was an "innocent spouse" during taxable years 1969 and 1970 for purposes of section 6013(e); (5) Whether petitioner may revoke her joint return election and file separate individual income tax returns for the taxable years in issue; and (6) Whether petitioner is subject to the addition to tax under section 6651(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner maintained her legal residence at the time the petition herein was filed in Creve Coeur, Missouri. She filed joint Federal income tax returns for taxable years 1969 and 1970 with her former husband, William G. Edwards (Edwards), on April 18, 1973. *489 During 1969 petitioner and Edward reported gross income of $26,317.82, of which $6,390.32 was attributable to petitioner as earnings from wages. Petitioner had $989 withheld by her employers for Federal income tax. In terms of taxable year 1970, petitioner and Edwards reported gross income of $31,237.28, none of which was attributable to petitioner. Edwards was employed from sometime in 1969 to February 1970, as an executive vice president of National Pizza Corporation (NPC). The position entailed the marketing of the company's pizza ovens and the sale of pizza distributorships, as outlined in the master distributorship contract. Under this contract, Edwards would travel to 24 separate counties within Missouri and Illinois. He also traveled by automobile in 1969 on company business to such diverse locations as Chicago, Denver, Louisville, and New York, from his residence in Creve Coeur, Missouri. Edwards made yearend odometer readings in 1969 to estimate his automobile business mileage and determined that 20 percent of the use was devoted to personal purposes. Total business mileage claimed on the 1969 income tax return was 28,392 miles, most of which related to overnight *490 travel. In addition, in 1969, Edwards claimed approximately $2,120 for client entertainment, $810 for customer travel, and $3,570 for meals and lodging, some of which was for customers. In February 1970, Edwards resigned his position at NPC. That same month he obtained employment with General Marketing Corporation (GMC) as a national sales representative for its products. In effect, Edwards designed his own position within the corporate statute at GMC by selling the company on the distribution concept that he had employed so successfully at NPC. The duties of this position involved marketing distributorships and franchises to beauty salons and wig shops. The only agreement entered into between GMC and Edwards involving this position was that so long as he performed in his job by obtaining distributors for the company, his position would be secure. GMC wanted Edwards to work at its Pompano Beach, Florida, facility because of several promotional programs which it was sponsoring at that location. Edwards rented a house in Pompano Beach and used it himself as well as for distributors who would come to Pompano Beach for training. During 1970, Edwards spent only approximately *491 30 evenings at his residence in Creve Coeur, Missouri, with petitioner and their two children and, during 1970, he advertised this Missouri residence for lease but did not accept any rental offers. During the course of his employment with GMC, Edwards would travel to meet prospects and entertain potential distributors. The automobile travel in 1970 was recorded by noting yearend odometer readings and estimating that 20 percent of the use was for nonbusiness purposes. Total business missleage claimed on the 1970 income tax return was 29,386 miles, most of which was claimed to be overnight travel. In addition, Edwards claimed approximately $1,973 for client entertainment, $730 for his travel, and $5,180 for meals and lodging, some of which was for customers, on the 1970 income tax return. When entertaining business clients, Edwards would generally obtain receipts for such expenditures. Sometime during October 1970, Edwards voluntarily terminated his employment with GMC because he did not want to become involved in a pyramid sales program. In November 1970, he began his own sales company, known as Bankers Marketing Company (BMC), in Pompano Beach, Florida. [2] Edwards rented *492 an office, hired a salesman, and incurred certain other expenses in the operation of the business. For a short while BMC had its own bank account. Edwards' prolonged absence from his home eventually alienated petitioner and caused marital difficulties. These difficulties culminated in a divorce on February 3, 1971. In early March 1971, Edwards abandoned BMC in Pompano Beach, Florida, transported all his worldly goods in the trunk of his automobile, and returned to St. Louis to live with his brother. While in St. Louis after his divorce, Edwards contacted a tax accountant to prepare his 1967, 1968, 1969 and 1970 tax returns. The available information for the preparation of individual income tax returns for the taxable years in issue was supplied by Edwards to the return preparer, including petitioner's W-2 wage statements from 1969. Because Edwards believed that he needed additional time to gather information for the taxable years involved, his prepared informed *493 him that extensions of time to file would be obtained. Since Edwards was still unemployed in St. Louis, he pursued employment opportunities with a company in Grand Rapids, Michigan. He flew from St. Louis to Grand Rapids and, upon accepting a sales position, remained there for a period of approximately four weeks. During this period Edwards prepared worksheets detailing his income and expenses for the respective years of 1969 and 1970, which he mailed to the preparer on or about July 7, 1971. The 1969 worksheet stated, in pertinent part: Sales Expense; Customer plane fares; Entertainment; Car rental when my car was damaged. At least -- $6,500.00 The 1970 worksheet stated, in relevant part: Motel expenses -- approx.
$1400.00
Rented house 7 momths
2910.00
Food
870.00
Plane trips (round trips to
730.00
St. L. each
$158.00)
These worksheets were prepared without the benefit of the receipts and documents, if any, that Edwards had in his possession. The alacrity with which the worksheets were prepared resulted from Edwards anticipation that he was entitled to a refund for the taxable years in issue. After the four-week period in Grand Rapids, Edwards *494 returned to St. Louis for the purpose of moving his personal items to Grand Rapids. In July 1972, Edwards went to work for his new employer in St. Louis. He once again moved all his personal belongings, including his 1969 and 1970 tax records, from Grand Rapids to St. Louis. He stored the tax records and collateral documents in an attache case in the trunk of his car. All tax records for 1968, unlike the 1969 and 1970 records, were stored in a file cabinet at Edwards' former Creve Coeur residence. Upon his arrival in St. Louis, Edwards checked into a hotel and left the tax records in his automobile. The next day, July 22, 1972, Edwards discovered that his car had been stolen. The theft was reported to the St. Louis Police Department and a vehicle theft report was filed on July 23, 1972. On the policy report, the only items of property described were articles of clothing worth approximately $100. The subject automobile, stripped of all personal property, was recovered by the policy and returned to Edwards on July 26, 1972. In that same month, Edwards was informed that the tax return preparer had sold his business to Berry's Bookkeeping & Tax Service (Betty). Included *495 in Betty's client file inventory were incomplete income tax returns for petitioner and Edwards with respect to taxable years 1967 through 1970, as well as incomplete extension requests. Edwards informed Betty to prepare the returns from the information he had given her. Betty complied with Edwards' request and the returns were given to Edwards on February 17, 1973. Petitioner signed the 1969 and 1970 returns sometime in 1973. The 1969 tax return showed a refund due to $2,449.79, and the 1970 tax return, a refund of $1,208.37. Petitioner did not examine the returns at the time of signing bu placed her complete confidence in Edwards. The joint returns for each year were received by the Midwest Internal Revenue Service Center at Kansas City, Missouri, on April 18, 1973. They were subjected to an audit on September 10, 1974, and Edwards began to reconstruct the stolen business expense records in either late 1975 or early 1976. In an effort to reconstruct such records, he contacted the First National Bank of Broward County, Florida, but the bank could not provide him with all the checks written during the taxable years in issue. Respondent had problems in attempting to locate *496 Edwards, and finally mailed a statutory notice of deficiency on June 23, 1976, to petitioner for the taxable years in issue. In that notice respondent determined that certain interest deductions were overstated for both 1969 and 1970. He further determined that certain employee business expenses attributable to Edwards were not established and thus not deductible for the taxable years in issue. [3]
OPINION Issue 1. Tax Home
Once again we are called upon to apply the recondite principles involved in determining where a taxpayer's home is located for tax purposes. Ordinarily, personal *497 living expenses are nondeductible as provided under section 262. However, section 162(a)(2)[4] allows a deduction for ordinary and necessary traveling expenses (including reasonable amounts expended for meals and lodging) while away from home in pursuit of a trade or business. The Supreme Court in Commissioner v. Flowers, 326 U.S. 465 (1946), established three conjunctive criteria for determining whether travel expenses are deductible. First, the expense must be reasonable and necessary; second, the expense must be incurred *498 "while away from home"; and last, the expense must be incurred in pursuit of a trade or business. Commissioner v. Flowers, supra at 470. It is well settled that when a taxpayer with an established tax home accepts employment away from that home, his personal living expenses are deductible if such employment is temporary or of short duration since it would be unreasonable to expect him to move his home under such circumstances. Commissioner v. Peurifoy, 254 F. 2d 483, 486 (4th Cir. 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958); Daly v. Commissioner, 72 T.C. 190, 195 (1979); Tucker v. Commissioner, 55 T.C. 783, 786 (1971); Kroll v. Commissioner, 49 T.C. 557, 562 (1968). A place of indefinite employment, on the other hand, is considered a taxpayer's home for purposes of section 162(a)(2). Commissioner v. Peurifoy, supra at 487. In the instant case, petitioner maintains [5] that Edwards' employment in Pompano Beach, Florida, *499 was of a temporary nature while respondent argues that such employment was of an indefinite character. Thus, the critical issue hereunder is whether Edwards' employment was temporary as distinguished from indefinite.
*500 Petitioner cites no authorities for her position, but relies instead, we must assume, upon the general rule that employment is temporary if it is expected to terminate within a relatively brief period of time and such termination could be foreseen. Cockrell v. Commissioner, 38 T.C. 470, 479 (1962), affd. 321 F. 2d 504 (8th Cir. 1963); Albert v. Commissioner, 13 T.C. 129, 131 (1949). Indefinite employment means, therefore, employment with respect to which the taxpayer cannot anticipate the actual termination date but which he does expect to continue for longer than a temporary period. Blatnick v. Commissioner, 56 T.C. 1344, 1348 (1971). The question of whether a taxpayer's employment was temporary rather than indefinite is a factual question and the burden of proof is on taxpayer. Welch v. Helvering, 290 U.S. 111 (1933). Rule 142(a), Tax Court Rules of Practice and Procedure.
We believe that the credibile evidence revealed by the record herein is insufficient to carry petitioner's burden of proof. *501 It is clear from the facts that Edwards could not anticipate the actual termination date but rather, expected to continue in the sales position for longer than a temporary period. There is not a scintilla of evidence in the record that either GMC or Edwards had in mind a fixed or foreseeable termination date. Edwards testified that his position would not be in jeopardy unless he failed to obtain distributors. In other words, his position would be terminated only if he failed to perform in that job. When asked whether he would have been given the position with GMC, if he had insisted on remaining in St. Louis with his family, he replied that he doubted it, since the position was "like a * * * trial run to see if [he] could * * * set up distributors." Despite Edwards' characterization of the position as a trial run, he did leave his unemployed spouse and their two children in St. Louis and went to work in Pompano Beach, Florida. He only returned to St. Louis during 1970 for about 30 evenings out of the year. At one point in time, Edwards even placed his St. Louis residence on the rental market. The abrupt termination of his position at GMC was of his own making. Because *502 of disagreement as to certain sales techniques, Edwards voluntarily resigned and, within a month, began his own company in Pompano Beach, Florida. When the appropriate criteria of Commissioner v. Flowers, 326 U.S. 465, 470 (1946), are applied to the circumstances of this case, we find that Edwards did not incur the travel expenses while away from home. Aside from the apparent lack of a fixed or foreseeable termination date, the voluntary termination of Edwards' position was his own decision. It is somewhat chimerical to assume, in the instant case, that the sole breadwinner would take a job, some 1,167 miles (St. Louis to Pompano Beach) from his family, if he did not reasonably expect to continue in that job for longer than a temporary period. Based upon all the facts of record, we conclude that Edwards' principal place of employment in the year 1970 was in the vicinity of Pompano Beach, Florida, for a substantial, indefinite, and indeterminate period of time, and that the expenses for meals, lodging, and transportation during that year are not deductible as traveling expenses away from hime, but are instead, nondeductible personal living expenses under section *503 262. [6]
Issue 2. Employee Business Expenses
Respondent argues that petitioner has failed to substantiate the travel and entertainment deductions taken by Edwards during the taxable years in issue.To the contrary, petitioner asserts that such deductions have been substantiated pursuant to the requirements of section 274.
Section 274 is a disallowance provision and operates only to disallow expenses which have been found to be allowable under some other section. *504 See H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 423; S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 730-731. The threshold question, therefore, is whether the travel and entertainment expenses incurred by Edwards are allowable section 162 business expense deductions.
Pursuant to section 162, a taxpayer is allowed a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 162 presents a fact question requiring a showing by petitioner that such travel and entertainment expenses were incurred primarily for business versus personal or social reasons and that a proximate relationship existed between the expenditures and Edwards' business. Henry v. Commissioner, 36 T.C. 879, 884 (1961). We find that there is sufficient evidence in the record to establish that the travel and entertainment expenses were incurred primarily for business and that a proximate relationship existed between the expenditures and Edwards' business. Throughout *505 the taxable years at issue, Edwards devoted himself to numerous business ventures. The testimony proferred by Edwards, which we found to be reliable, and the testimony offered by one of his former distributors, establishes that Edwards incurred substantial travel and entertainment expenses. We must conclude, therefore, that the said expenses are deductible under section 162, subject to the disallowance provisions of section 274. Petitioner must satisfy the requirements of section 274(d)[7] to the extent provided under section 1.274-5, Income Tax Regs.Under those regulations, petitioner must maintain "adequate records" which sufficiently delineate the elements of the expenditures at or near the time of such expenditure. The elements in the case of travel expenditures, including lodging and meals incidental to such travel, are the amount, time, place and business purpose. Sec. 1.274-5(b)(2), Income Tax Regs.Similarly, the elements in the case of entertainment expenditures are the amount, time, place, business purpose, and business relationship *506 of the recipient. Sec. 1.274-5(b) (3), Income Tax Regs.
The preceding describes the substantiation ordinarily required of taxpayers. In this case, however, *507 Edwards' records were stolen. Accordingly, unless petitioner can otherwise substantiate Edwards' expenditures, the claimed deductions must be denied. Under section 1.274-5(c)(5), [8] Income Tax Regs., if the taxpayer can establish that he at one time possessed adequate records and that his present lack of records is due to circumstances beyond his control, such as fire, flood or other casualty, then he may substantiate his deductions by reasonable reconstruction of his expenditures. We are persuaded in the instant case, from all the evidence in the record, that Edwards maintained business records and the underlying documentation thereof. The testimony of *508 a dis-interested witness indicated that Edwards was in the habit of obtaining receipts whenever he made an entertainment expenditure. Edwards also testified, corroborated to some extent by the testimony of another witness, that he maintained an appointment book to record business expenditures. With respect to the travel expenditures, there is sufficient evidence in the record to establish the existence of considerable travel expenditures in 1969. Moreover, Edwards chose to calculate the amount of his travel deduction by using the "optional method" for calculating automobile expenses as provided by respondent under Rev. Proc. 70-25, 1970-2 C.B. 506, superceded by Rev. Proc. 74-2381974-2 C.B. 476, modified by Rev. Proc. 77-40, 1977-2 C.B. 574. This method obviates the need to substantiate the amount of such expense. Only the time, place and business purpose of the travel need be substantiated for section 274(d) purposes. [9]
We also find that petitioner's claim as to the loss of the records due to a casualty beyond Edwards' control is supported by the facts. A *509 theft is the type of casualty envisioned by respondent's regulations, because it is generally beyond taxpayer's control. But see Gizzi v. Commissioner, 65 T.C. 342 (1975). Petitioner clearly satisfied this requirement. Edwards testified that what records he had for taxable years 1969 and 1970 were stolen when his vehicle was stolen. Competent evidence, in the form of a police report, was submitted to show the existence of such a theft. While the vehicle was subsequently recovered, the records were not. Once it is determined that Edwards had maintained records adequate to substantiate his claimed deductions but lost such records due to circumstances beyond his control, only a reasonable reconstruction of the lost records is thereafter required of petitioner as substantiation. Since Edwards chose to calculate his deduction for auto travel away from home by using respondent's optional method, petitioner must reconstruct the time and place of travel as well as its business purpose, but not the amounts of the expenditures. The master distributorship contract with NPC that petitioner produced at trial provides us with a reasonable reconstruction of Edwards' travels *510 during 1969 and January 1970. From this document we are able reasonably to determine the places of Edwards' travel. In addition to such documentary reconstruction, petitioner and Edwards have presented credible nd uncontroverted testimony to reconstruct orally the times and business purpose of Edwards' travel. Moreover, the business purpose of an expenditure may be inferred, pursuant to section 1.274-5(c)(2)(ii)(b), Income tax Regs., from the surrounding facts and circumstances if the purpose is evident from such facts and circumstances. The scope of petitioner's reconstruction clearly distinguishes this case from those, including Gizzi v. Commissioner, supra, in which we have held that testimony uncorrobotated by documentary evidence is insufficient to constitute a reasonable reconstruction of records. [10] We therefore find that the testimony and documentary evidence supplied by petitioner provided a reasonable reconstruction of business expenditures for automobile travel for 1969 and the first month of 1970. *511 Having determined that petitioner provided a reasonable reconstruction of the pertinent elements of Edwards' expenditures for travel away from home, and using our best judgment based on the evidence available, we have found that Edwards traveled 25,000 miles and 2,000 miles for business purposes, respectively, in 1969 and 1970. The allowable deduction is to be computed under the standard mileage rate.
With respect to the remainder of taxable year 1970, the situation is different. We believe that it is reasonable to assume, absent evidence to the contrary and in view of the fact that Edwards' tax home was in Florida, that most of the 29, 386 miles claimed by Edwards on the 1970 income tax return could have been attributable to trips made between St. Louis and Florida. Since it is clear from the record that Edwards returned to St. Louis for the purpose of visiting his family, we find that such trips lack a business purpose and therefore fail to qualify as an allowable deduction under either section 162 or section 274. Petitioner must also demonstrate a reasonable reconstruction of Edwards' meals and lodging expenses in 1969 and his entertainment expenses in 1969 and 19709 [11] *512 Such reconstruction must depict the elements of amount, time, place, business purpose, and in the case of entertainment expenses, the additional element of business relationship to the recipient. During 1969 Edwards claimed $3,570 for meals and lodging. It is clear from the record that he must have incurred some overnight meals and lodging expenses, [12] yet his testimony failed utterly to reconstruct such expenditures. We do not know places dates or amounts.There is documentary evidence in the records, to establish business purpose and some probable expense, but no more. Respondent is sustained on this issue. *513 To the same effect, petitioner must provide and prove reasonable reconstruction of Edwards' entertainment expenses in 1969 and 1970. Petitioner must reconstruct these expenses to depict the elements of amount, time, place, business purpose, and business relationship to the recipient. In this regard, petitioner only offers the testimony of Edwards and it is entirely too vague and general to qualify as a reconstruction. Again we do not have dates, events, amounts or exact statement of business purpose. Even the exact identity of the person or persons entertained is unknown. It is petitioner's position that such reconstruction as is offered is reasonable under the circumstances because of the significant time lag in Edwards' reconstruction and because respondent has offered no witneses to contradict this reconstruction. Petitioner is wrong on both counts. Edwards did not commence his reconstruction until late 1975 or early 1976. Thus, Edwards' purported reconstruction of the travel and entertainment expenses did not begin until approximately five or six years after the tax years at issue. Petitioner argues that requiring Edwards to substantiate each item of expense is too *514 harsh, too technical, and goes far beyond the requirements of the law. Once again, petitioner cites no authority for this generalization. In addition, petitioner is under the apparent misconception that the lost records exception provided in the regulations shifts the burden of proof to respondent. Section 274 evidences a clear congressional intent to place the risk of inadequate proof entirely on petitioner. Nor are we willing, even if we could, to resurrect the Cohan rule in this context by making allowances for Edwards' incomplete memory of events long past. [13]Section 1.274-5(c)(5), Income Tax Regs., the lost records exception, cannot be used to relieve a taxpayer of the necessity of establishing, with reasonable clarity, the elements of the expenditures heretofore described. Petitioner's virtual failure at any kind of reasonable reconstruction with respect to the disuted travel and entertainment expenditures results in their disallowance as deductions under section 274. [14] Nor is this a Draconian result, as petitioner contends, because it was taxpayer's duty *515 to keep adequate records and, to the extent that such records were lost, a reasonable reconstruction of the elements of the expenditures is demanded of all taxpayers who claim the tax benefit of a deduction. Such deduction is not, as petitioner contends, a matter of some nebulous right, but is a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S 435 (1934). For all of the above reasons, we find and hold that meals and lodging expenses in 1969 and the entertainment expenses in 1969 and 1970 are nondeductible expenditures. Issue 3. Interest Deductions
The parties are in agreement that the deductible interest for 1969 and 1970 should total at least $2,212 and $2,237, respectively. However, petitioner claimed $91.70 and $82.20 in the respective years in excess of the stipulated accounts. The burden of proof is on petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure. She did not testify, present any evidence, or argue this issue on brief. We find therefore that respondent's determination must be upheld. Issue 4. Innocent Spouse
*516 Petitioner argues, in the alternative, that she is an innocent spouse. While recognizing that she may not be within the statutory definition of an innocent spouse as provided under section 6013(e), nevertheless, petitioner asserts that, at least in the generic sense, she is an innocent spouse and is within the "spirit of the law." She further contends that since no evidence has been produced to show that she had anything to do with the actual filing of the joint income tax returns for the taxable years in issue, she is truly blameless. Respondent, on the other hand, argues that section 6013(e) is inapposite to the facts at hand. While we recognize the predicament in which petitioner finds herself, we must agree with respondent. Section 6013(e)(1)[15] absolves a spouse from liability for tax, interest, and penalties on income omitted from a joint return under specified circumstances. Three conjunctive conditions must be met to obtain relief under this section. First, a taxpayer must file a joint return from which income attributable to her spouse and in excess of 25 percent of the *517 gross income stated in the return was omitted; second, she neither knew nor had reason to know of the omission; and last, that under all the facts and circumstances (including whether taxpayer benefited significant from the omitted income), it would be inequitable to hold her liable for the tax on the omitted income. *518 In this case, petitioner failed to file her joint income tax returns on their respective due dates in 1969 and 1970. Instead, she filed them with her former spouse sometime in 1973 and such returns were not received by respondent until April 18, 1973. On audit, respondent challenged certain deductions taken with respect to the 1969 and 1970 taxable years. At no time, however, did respondent argue that either petitioner or her spouse erroneously omitted income, a necessary prerequisite to the application of section 6013(e)(1)(A). Petitioner also overlooks section 1.6013-5(d), Income Tax Regs., which provides that section 6013(e) shall apply only where there is an omission of income from a joint return but "shall not apply to a tax deficiency resulting from erroneous or fraudulent deductions, claims, or other evasions or avoidances of tax." See also S. Rept. No. 91-1537, 91st Cong., 2d Sess. 1971-1 C.B. 606-608. We have held that section 6013(e) does not apply in the situation where a taxpayer's spouse erroneously overstated the cost of goods *519 sold deduction but did not err in reporting gross income received. Resnick v. Commissioner,63 T.C. 524 (1975). Furthermore, in addition to petitioner's failure to meet the condition described under section 6013 (e)(1)(A), it appears that she also fails to meet the condition prescribed by section 6013(e)(1)(B).[16]
Since the amount of the erroneously claimed deductions was set forth on the returns signed by petitioner, it cannot be said that there was any omission of which she had no knowledge. Petitioner testified at trial that she never examined the returns for the taxable years in issue because she had confidence in her spouse to correctly file the returns.Such confidence can never absolve petitioner of her duty to examine and question items on the returns before affixing her signature thereto. *520 Petitioner finally argues that the entire innocent spouse doctrine needs to be reexamined and broadened so as to protect an innocent spouse.While we have some sympathy for petitioner's position, nonetheless, she must seek reform from Congress instead of the courts. The mere fact that Congress has not passed a statute to petitioner's liking is not grounds for asserting that a more liberal approach should prevail in cases where, subsequent to a divorce, a spouse knowingly signs a joint return with her former husband and certain erroneous deductions are claimed thereon.
The privilege of filing joint returns must carry with it the responsibility for joint and several liability, which Congress never intended to mitigate by the enactment of section 6013(e), as we stated in Sonnenborn v. Commissioner,57 T.C. 373, 380-381: It is important that these provisions [section 6013(e)] be kept in proper perspective.The filing of a joint return is a highly valuable privilege to husband and wife since the resulting tax liability is generally substantially less than the combined taxes that would be due from both spouses if they had filed separate returns. This circumstance *521 gives particular emphasis to the statutory rule that liability with respect to tax is joint and several, regardless of the source of the income or of the fact that one spouse may be far less informed about the contents of the return than the other, for both spouses ordinarily benefit from the reduction in tax that ensues by reason of the joint return. However, some highly inequitable results were called to the attention of Congress, particularly where a wife had been divorced or separated or abandoned after the tax year, where she was saddled with a disproportionately high tax liability as a consequence of having filed a joint return, where such liability grew out of income attributable only to the husband, unknown to the wife, and where she had not enjoyed any benefit therefrom. It was in an effort to eliminate the unfairness of the joint and several liability provisions in such circumstances that section 6013(e) was enacted. To be sure, section 6013(e) is not limited to precisely such narrow situations. But it must be kept in mind that Congress still regards joint and several liability as an important adjunct to the privilege of filing joint returns, and that if there is to *522 be any relaxation of that rule the taxpayer must comply with the carefully detailed conditions set forth in section 6013(e). * * * [Fn. ref. omitted; emphasis supplied.] To apply the innocent spouse provisions, as Congress intended them to be applied, all three conditions of section 6013(e)(1) must therefore be satisfied. Failure to satisfy any one is fatal to the classification. See Estate of Jackson v. Commissioner,72 T.C. 356, 362 (1979); Adams v. Commissioner,60 T.C. 300, 304 (1973). We therefore find that petitioner is not an innocent spouse within the provisions of section 6013(e) and so hold. Issue 5. Revocation of Joint Return Election
On brief and at trial petitioner raises a further alternative position with respect to her joint return election. Petitioner argues that she should be permitted the right to revoke her joint election for taxable years 1969 and 1970 and file separate tax returns for those years. Respondent asserts that after the period for filing returns has expired, an election to file a joint return is irrevocable. *523 Petitioner refers this Court to a Memorandum Opinion as authority for her position.In Wilson v. Commissioner,T.C. Memo. 1976-285, we dealt with a taxpayer whose marriage was declared null and void ab initio in 1973, thereby making an effective joint return election for taxable years 1966 and 1967 impossible since the taxpayer was not legally married. Thus, the taxpayer was permitted to recompute her tax liability on an individual return basis. The instant case is clearly distinguishable from Wilson,supra. During the taxable years in issue petitioner was legally married. The decree of divorce petitioner obtained on February 3, 1971, was not a decree which declared the marriage null and void ab initio. In short, petitioner was legally married when she made her joint return election and cannot point to an inapposite case as authority for allowing her the right to revoke such election. [17]
*524 Prior to 1951, the law was firmly established that after the expiration of the limitations period for filing returns, the election by spouses to file either a joint return or separate returns was irrevocable. Morris v. Commissioner,40 F. 2d 504 (2d Cir. 1930), affg. 15 B.T.A. 1252 (1929); Barbetti v. Commissioner,9 T.C. 1097 (1947). In 1951, Congress enacted section 312 of the Revenue Act of 1951, 65 Stat. 488 (currently section 6013(b)), which specifically allowed the revocation of an election to file separate returns. The inference from this enactment is that Congress never intended to change the law as to the irrevocability of the joint return election. In Ladden v. Commissioner,38 T.C. 530 (1962), we held that the attempted revocation of a joint return election was not permissible. We stated the basis for our holding in Ladden, which has been followed on numerous occasions (38 T.C. at 534): Thus, Congress for the first time specifically permitted the revocation of an election to file separate returns. At the same time Congress made no change regarding the irrevocability of the *525 election to file joint returns. Congress was aware of the existing law regarding irrevocability of the election to file either separate or joint returns. * * * The inference is persuasive that Congress did not intend to change the law with respect to the irrevocability of the election to file joint returns. We so hold. [Fn. ref. omitted.] In accordance with our holding in Ladden,supra, we hold here that petitioner is not entitled to file separate returns for taxable years 1969 and 1970. [18]
Issue 6. Additions to Tax under Section 6651(a)
The final issue is whether respondent properly determined the addition to tax under section 6651(a). [19] That section provides, inter alia, that if there is a failure to file an income tax return on the date prescribed therefor (including extensions of time for filing), unless it is shown that such failure is due to reasonable cause *526 and not due to willful neglect, there shall be added to the amount required to be shown as tax on the return, a penalty not exceeding 25 percent in the aggregate. Moreover, section 6013(d)(3) requires that if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several. Thus, unlike section 6653(b), the addition to tax for delinquent filing under section 6651(a)(1) applies to a spouse whose own actions may not have precipitated the imposition of the penalty. *527 Petitioner maintains that the government was not harmed by the late filing since the tax at the time of filing, as depicted on the return by petitioner and her spouse, was fully paid by amounts withheld from salary. The imposition of the section 6651(a)(1) penalty is upon the amount required to be shown as tax on such return. Consequently, if there is no amount required to be shown as tax on the return (as in some cases of excess withholdings, estimated tax payments, or net operating loss carryovers), then there can be no penalty. See Goodwyn Crockery Co. v. Commissioner,37 T.C. 355 (1961), affd. on other grounds 315 F. 2d 110 (6th Cir. 1963).This is not the case here. The corrected tax liability exceeds the combined withholdings in both taxable years 1969 and 1970. Such excess is the amount required to be shown as tax on the return and subject to the section 6651(a)(1) penalty. Petitioner's other arrow similarly misses its mark when she argues that the employer's W-4 form together with respondent's copy of petitioner's W-2 wage statement can be *528 considered the timely filing of a return. This argument is clearly frivolous, since its adoption would negate the requirement of filing any income tax return for those individuals with only earned income from salaries. Petitioner falls squarely within section 6011 and the regulations thereunder which require that a return be filed in the manner prescribed by respondent. A return is only considered valid when it contains sufficient information from which respondent can compute and assess a tax liability. Commissioner v. Lane-Wells Co.,321 U.S. 219 (1944); White v. Commissioner,72 T.C. 1126 (1979). There remains the question of whether petitioner's reliance on her spouse to prepare and file the 1969 and 1970 tax returns constitutes reasonable cause thereby excusing petitioner from section 6651(a)(1) liability. Petitioner bears the burden of proving reasonable cause. Rubber Research, Inc. v. Commissioner,422 F. 2d 1402 (8th Cir. 1970), affg. a Memorandum Opinion of this Court; Rule 142(a), Tax Court Rules of Practice and Procedure. In general, *529 if the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to reasonable cause. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. See also Arcade Realty Co. v. Commissioner,35 T.C. 256, 267 (1960). While respondent has formulated no guidelines as to what constitutes reasonable cause, nonetheless, it is well settled that forgetting to file a tax return or failing through inadvertence to see that it is filed does not constitute reasonable cause. Logan Lumber Co. v. Commissioner,365 F. 2d 846, 853 (5th Cir. 1966), affg. a Memorandum Opinion of this Court. The responsibility for filing a return on time rests squarely with each taxpayer. If every taxpayer who inadvertently did not file a tax return escaped the penalty for failure to file, our tax system would eventually collapse. Indeed, the penalty is not primarily punitive in nature, but is an attempt to protect the fisc. Plunkett v. Commissioner,118 F. 2d 644, 650 (1st Cir. 1941). *530 Under the facts of this case, the 1969 and 1970 returns were first filed with respondent on April 18, 1973, more than three years and two years, respectively, after they were due. It also appears from the evidence that petitioner was fully aware of the necessity for filing the returns on or before April 15, but chose not to inquire about their timely preparation from her spouse. Moreover, there was no reason why petitioner could not have filed a separate return for the relevant years once she determined that her spouse's conduct was dilatory in this regard. We are unable to conclude, therefore, that petitioner has shown that the failure to file the 1969 and 1970 tax returns within the time prescribed was due to reasonable cause and not due to willful neglect. Accordingly, we approve respondent's assertion of the 25-percent addition to tax under section 6651(a)(1). Because of the conclusions reached herein and to reflect the concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
2. Under Florida law, use of the term "Bankers" in a company's name was limited to financial institutions. Since Edward's company was not a financial organization, it could not be, and was not, incorporated.↩
3. In addition, the respondent found that petitioner had understated her deduction for taxes in the years 1969 and 1970, and certain short-term capital losses taken in 1969 and 1970 were disallowed. Petitioner agreed to the former determination and respondent conceded the latter by allowing the loss deductions as theft losses in taxable year 1970. The parties also mutually agreed on a partial sum deductible as interest during 1969 and 1970, with the remaining amount of interest still in dispute.↩
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
5. Petitioner also argues on brief that she was surprised by the tax home issue hereunder since the statutory notice of deficiency failed to expressly state this as one of the reasons for disallowance of the traveling expenses. We disagree. This is an attempt by petitioner to create a false issue. It is readily apparent that any obscurity resulting from the generality of the deficiency notice has been relieved by the position of the parties at trial. Furthermore, it appears that petitioner was informed of the tax home issue because she stipulated to respondent's contention that it had not been established that Edwards' tax home was in St. Louis. While we might lend a more sympathetic ear to a taxpayer who was not given adequate advance notice of respondent's position by either the notice of deficiency, the pleadings, or pretrial negotiations, such is not the situation in the case sub judice. Cf. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Mayerson v. Commissioners, 47 T.C. 340, 349↩ (1966).
6. We need not, and do not, decide the question of whether Edwards' employment was originally temporary and became indefinite due to changed circumstances or simply by the passage of time because of our holding hereunder. However, it is clear from the facts that a necessary ingredient for this "temporary then indefinite" argument is missing. In this case, Edwards' employment at Pompano Beach was never "temporary in contemplation at the time of its acceptance." Commissioner v. Peurifoy, 254 F. 2d 483, 486 (4th Cir. 1957). See, e.g., Norwood v. Commissioner, 66 T.C. 467, 470↩ (1976).
7. Sec. 274(d). Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodgint while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recretation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. * * *↩
8. Sec. 1.274-5(c)(5).Loss of records due to circumstances beyond control of taxpayer↩. Where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures.
9. See Schneider v. Commissioner, T.C. Memo. 1978-477↩.
10. See, e.g., Blackshear v. Commisioner, T.C. Memo. 1977-231; Herrick v. Commissioner, T.C. Memo. 1977-171; Echols v. Commissioner, T.C. Memo. 1976-264↩.
11. The $810 and $730 deducted in the respective taxably years of 1969 and 1970 for customer travel, should be properly esignated as a form of promotional expense and, thus, run the gauntlet of sec. 274 for deductibility under sec. 162↩. Respondent has conceded on brief that various promotional expenses, other than for customer travel, were substantiated with documentary evidence and were, therefore, valid deuctions in 1970. These will be allowed in the Rule 155 computations.
12. The master distributorship contract, offered into evidence, defined an area of 24 counties within two states, which was the geographic region of Edwards' responsibility. Of these 24 counties, only a few were within a close promixity of St. Louis. These few counties in Missouri of Camden, Cooper, Miller and Morgan, approximately 150 miles from St. Louis, may have resulted in overnight means and lodging expenses for Edwards.↩
13. See Freedman v. Commissioner, T.C. Memo. 1976-332↩.
14. See Ranheim v. Commissioner,T.C. Memo. 1979-502↩.
15. SEC. 6013(e). Spouse Relieved of Liability in Certain Cases.-- (1) In general.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.↩
16. Arguably petitioner would also fail the condition set forth at sec. 6013(e)(1)(C) if it could be shown that petitioner significantly benefited from the tax savings attributable to the erroneously claimed deductions. This is a moot point, however, considering petitioner's failure to satisfy either condition found at subsection (A) or (B) of sec. 6013(e)(1)↩.
17. It is unclear from petitioner's brief whether she is arguing that, assuming we found a revocation of her joint return election, she should be permitted to fine (as the taxpayer in Wilson v. Commissioner,T.C. Memo. 1976-285↩) as a single or unmarried individual. Assuming arguendo, that we were to find such a revocation, it is clear that in no event could she file as a single individual since she was still legally married and living with her spouse during the taxable years in issue. Thus, her only possible recourse is the filing status of a married individual filing a separate return.
18. See also Riedel v. Commissioner,T.C. Memo. 1978-468; Roth v. Commissioner,T.C. Memo. 1977-17; Leger v. Commissioner,T.C. Memo. 1970-36↩.
19. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;↩