MORELAND L. HARTWELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hartwell v. Commissioner
Docket No. 2826-80.
United States Tax Court
T.C. Memo 1982-215; 1982 Tax Ct. Memo LEXIS 530; 43 T.C.M. (CCH) 1157; T.C.M. (RIA) 82215; April 22, 1982. Moreland L. Hartwell, pro se. Velda J. Moog, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined an income tax deficiency of $ 585.24 for the taxable year ended December 31, 1976. The only issue for decision is whether Moreland L. Hartwell (petitioner) is entitled to a deduction for travel expenses in the amount *531 of $ 2,548. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Longview, Washington. His trade is pipefitting and instrumentation control for industrial processes. From 1968 to 1975, petitioner worked and resided with his family in California. In January 1975, petitioner left his home in Lomita, California, to work for three months as instrument superintendent on a Fluor Corporation project in Longview, Washington. He was requested by Fluor to accept this position, and in part he did so because of marital difficulties which he hoped would abate after a short separation. Upon completion of the Fluor project, petitioner determined that employment opportunities were abundant in Longview and he asked his family to join him there. His wife refused to move, and he remained alone in Longview. At this time, petitioner did not intend to return to California. Petitioner lived in a motel room during his first six months in Longview, after which he moved into a house with a woman friend. He shared all expenses, and did some *532 minor plumbing and painting around the house. The furniture belonged to his live-in companion, but petitioner purchased appliances and a television set for the house. During this period petitioner was informed by his wife that she had filed for divorce. Although he later learned that his wife obtained only a legal separation, he was convinced that his relationship with his wife was over. Petitioner flew to Los Angeles in the fall of 1975 in an unsuccessful attempt at reconciliation, but he never again lived with his wife, who is now deceased. The method by which petitioner normally obtained employment was through a union "local" to which he belonged. Since 1970 petitioner has been a member of the local in Los Angeles. Although it was more difficult for petitioner to obtain employment in Washington while a member of the Los Angeles local, he could not join a Washington local, at least in the year in question, because he could not satisfy the prerequisite of three years of "unbroken time" working out of a Washington local. While living in Washington in 1975, petitioner opened checking and savings accounts at the Ranier Bank. In addition, petitioner registered his automobile *533 in Washington, though he continued to hold a California driver's license. Petitioner voted as a Washington resident in National and state elections in 1976. In late November of 1975, the steamfitters' union went on strike throughout Washington, and as a result petitioner was involuntarily unemployed. He collected "unemployment" for two months, and when it appeared that the strike would last several additional months, he called his "home local" in Los Angeles seeking work. He was able to obtain employment with C.F. Braun & Co., working as instrument foreman on a project at Standard Oil of California's El Segundo refinery, in the Los Angeles area. Petitioner was informed that his job would last for two to three months, with the possibility of additional work if Standard Oil could get the necessary clearance for other construction at that location. Although he thought that the additional construction might extend the El Segundo refinery project to approximately one year, petitioner accepted this employment with the intention of remaining in California only until the Washington steamfitters' strike terminated. Petitioner believed that the strike's duration would be less than one *534 year. The longest strike that he had experienced was approximately six months, and in view of the number of large construction projects left idle by the steamfitters' strike, petitioner expected that the strike would be settled "in the near future". Upon his arrival in Los Angeles, petitioner stayed for three weeks at the Pen and Quill motel in Manhatten Beach, California, which was almost within walking distance of his job, and then stayed four weeks at another motel, the Proud Parrot, in Lomita, California, which was approximately eight miles from his job. The parties have stipulated that in 1976 the cost of a night's lodging at the Pen and Quill and the Proud Parrot was $ 18 and $ 14, respectively. At the beginning of March, petitioner learned that more work would be done at the El Segundo refinery, and that the project would last for perhaps two years. Although he still intended to return to Washington when the strike was over, he now expected the strike to last until the summer of 1976. In order to reduce expenses he rented an apartment in Hawthorne, California, approximately five miles from his job. Petitioner initially paid one month's rent of $ 155 plus a deposit *535 of $ 135. On April 1, 1976, he paid rent of $ 155 for another month. The following day, petitioner was laid off at the El Segundo refinery job and he was unable to obtain further employment through his union local. Petitioner then vacated his apartment and returned to Longview, Washington. Because of his premature termination of the lease, petitioner was required to forfeit his $ 135 deposit and was refunded $ 116.25 (three-fourths) of his April rent. While petitioner was working in California in January-April of 1976 he continued sharing the expenses of the Longview house with his woman friend. On four occasions, he made weekend trips to Longview to see her. Petitioner returned to Longview in April 1976, but he was unable to commence working until August, some three weeks after the strike ended. He was not rehired for the project on which he had been working when the strike began, apparently because that project had been "sold," but he did substantial work in Longview during the remainder of 1976. [1] Except for a six-week job in California in 1977, petitioner lived in Longview and shared the house with his friend until 1979. *536 During the seven weeks in January and February of 1976 that petitioner was staying in motels in the Los Angeles area, he would pay the room charge each week, in advance, and immediately enter the payment in a diary. Receipts for each payment were kept in the diary. Petitioner followed the same procedure when making rental payments for the Hawthorne apartment. However, he did not enter meal expenses in the diary and he failed to get receipts therefor. Petitioner paid all of his expenses in cash. On or about March 27, 1978, petitioner's car was burglarized and among the items stolen was a metal box containing the expense diary and receipts. A police report was made of the burglary in which specific reference was made to the metal box. On his 1976 Federal income tax return, petitioner claimed a travel expense deduction in the amount of $ 2,548. This figure was apparently computed as follows: Lodging:
91 days at $ 18/day
$ 1,638
Meals:
91 days at $ 10/day
910
$ 2,548
In disallowing the deductions the Commissioner ruled: (1) that petitioner failed to substantiate the expenditures in accordance with section 1.274-5, Income Tax Regs.; and (2) that *537 these claimed travel expenses were nondeductible personal expenditures because they were incurred in a location in which petitioner was working for an indefinite period and was thus not "away from home". OPINION On brief, the Government concedes the "away from home" issue, leaving in controversy only the section 274(d) substantiation issue with respect to deductibility of petitioner's expenses for meals and lodging. Section 274(d) requires substantiation of each expense, as to amount, time, place and business purpose, "by adequate records or by sufficient evidence corroborating his own statement". [2] See Section 1.274-5(c), Income Tax Regs.
*538 Substantiation by "adequate records" requires maintenance of an account book, diary, or similar record, plus documentary evidence such as receipts, though duplication is not necessary "so long as such account book and receipt complement each other in an orderly manner". Section 1.274-5(c)(2)(i), Income Tax Regs.The cost of meals can be aggregated on a daily basis. Section 1.274-5(b)(2)(i), Income Tax Regs. Documentary evidence is required, however, for "[a]ny expenditure for lodging while * * * away from home", and, by implication, not for any other expenditures of less than $ 25. Section 1.274-5(c)(2)(iii) (a) and (b), Income Tax Regs. Substantiation by the alternative of "other sufficient evidence" allows the taxpayer to establish each element of an expenditure (section 1.274-5(c)(3), Income Tax Regs.): (i) By his own statement, whether written or oral, containing specific information in detail as to such element; and (ii) By other corroborative evidence sufficient to establish such element. It is clear that substantiation of expenses by "other sufficient evidence" must include the production of evidence to buttress a taxpayer's statements; Congress sought *539 to preclude deductions claimed solely on the basis of a taxpayer's "unsupported, self-serving testimony". S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 741; see Woodward v. Commissioner,50 T.C. 982, 993 (1968); Sanford v. Commissioner,50 T.C. 823, 830 (1968), affd. 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Within the foregoing regulatory framework we consider the evidence presented by petitioner to substantiate his expenses. Meals. In respect of the $ 910 claimed as expenses for meals, we have solely petitioner's estimate, made orally at trial and in writing in a letter to his accountant dated August 28, 1979. Petitioner testified that he neither had receipts nor made contemporaneous entries in his diary to record his costs for meals. Thus, he clearly did not satisfy the "adequate records" requirement of the regulations. Moreove, petitioner can find no relief in the provision for substantiation by "other sufficient evidence". As indicated above, petitioner's uncorroborated statements, either oral or written, will not suffice for the allowance of this *540 deduction. Tempted as we may be to allow petitioner some deduction since he certainly incurred expense for meals while in Los Angeles, we cannot approve any deduction based solely on our estimate, because Congress specifically intended to preclude such a result in enacting section 274(d). See S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 741 ("This provision is intended to overrule, with respect to such expenses the so-called cohan rule"). Lodging. Petitioner was considerably more diligent in keeping records in respect of his lodging expenses. These expenses, which he paid in cash, were recorded "at or near the time of the expenditure", section 1.274-5(c)(2)(ii), Income Tax Regs., and receipts were obtained and kept in his diary or log. With regard to these expenditures, then, the requirements for substantiation by "adequate records" were satisfied. Petitioner was unable to produce these records at trial because they were stolen from his automobile in 1978. Nevertheless, section 1.274-5(c)(5), Income Tax Regs., provides that if a taxpayer maintains adequate records, but such records are lost due to circumstances beyond his control, the *541 deductions may be substantiated by "reasonable reconstruction of his expenditures". Since the records herein were stolen -- a circumstance plainly beyond his control, see James v. Commissioner,40 T.C.M. 45, 50 (1980), 49 P-H Memo T.C. par. 80,099 (1980); Ranheim v. Commissioner,39 T.C.M. 720, 722 (1979), 48 P-H Memo T.C. par. 79,502 (1979) --, petitioner is entitled to substantiate his costs by "reasonable reconstruction of his expenditures". At trial, petitioner testified in significant detail as to the amount, time, place, and business purpose of his lodging expenditures. His recollection of names of establishments, addresses, dates, amounts expended and (for his April rent) refunded, and proximity of lodging to his job location was all highly credible, and indeed the parties have stipulated the rental rates of the motels at which he stayed, as well as the rental for his apartment. We found as fact that he incurred the following lodging expenses: Pen & Quill, 21 days at $ 18
$ 378.00
Proud Parrot, 28 days at $ 14
392.00
Hawthorne Apartments, 1-1/4 months
rent at $ 155
193.75
Hawthorne Apartment deposit, forfeited
135.00
$ 1,098.75
*542 This situation is to be sharply distinguished from an attempt to satisfy the substantiation requirement by "other sufficient evidence" where no diary or similar record with qualifying accompanying documentation is kept in the first place. Here, petitioner did maintain such records, but they were stolen. What constitutes an acceptable reconstruction of those original records must depend upon the circumstances of each case. And, in our view, petitioner's wholly credible and precise evidence in this case was sufficient. An entirely different result might conceivably be reached where the evidence is vague, where estimates or approximations may be required, where the relationship of the claimed expenditure to the taxpayer's business might fall in such murky areas as, for example, entertainment, that are often open to abuse, or where the evidence of the loss or theft of the records is not wholly satisfactory. Here, the relationship of the expenditures to petitioner's trade or business is undisputed, the amounts are precise and do not require any Cohan approach, and the adequate records that were kept in the first instance were convincingly shown by both documentary and testimonial *543 evidence to have been stolen. We hold that petitioner reasonably reconstructed his lodging expenses, and he is therefore entitled to a deduction of $ 1,098.75 for the taxable year ended December 31, 1976. Decision will be entered under Rule 155.
Footnotes
1. Petitioner's 1976 income tax return discloses earnings of $ 9,164.80 from the Swinerton & Walberg Co. of Longview, Washington.↩
2. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (c) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩