T.C. Memo. 2015-30

UNITED STATES TAX COURT

JEFFREY B. PALMER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9691-12.                    Filed February 25, 2015.

Jeffrey B. Palmer, for himself.

David Zoss, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge: The respondent (referred to here as the "IRS") mailed the petitioner, Jeffrey B. Palmer, notices of deficiency for the 2008 and 2009 tax years, respectively. In those notices the IRS determined the following deficiencies

**[\*2]** in income tax, with additions to tax for late filing, late payment, and failure to pay estimated income tax:[1]

| | | Additions to tax | | |
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6651(a)(2) | 6654(a) |
| --- | --- | --- | --- | --- |
| 2008 | $3,830 | $738.23 | $524.96 | $103.50 |
| 2009 | 80,648 | 18,124.65 | 8,458.17 | 1,928.41 |

Palmer timely filed a petition under section 6213(a) for redetermination of the deficiencies and the additions to tax. We have jurisdiction under section 6214(a). After concessions, the issues for decision are:

(1)    Whether Palmer is entitled to moving-expense deductions for the 2008 and 2009 tax years. We hold that he is not. See infra part 1.

(2)    Whether Palmer is liable for the section-6651(a)(1) addition to tax for the 2008 and 2009 tax years. We hold that he is liable. See infra part 2.a.

(3)    Whether Palmer is liable for the section-6651(a)(2) addition to tax for the 2009 tax year.[2] We hold that he is liable. See infra part 2.b.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.

[2]As discussed infra part 2.b., the IRS has conceded that Palmer is not liable for the sec.-6651(a)(2) addition to tax for 2008.

**[*3]** (4)     Whether Palmer is liable for the section-6654(a) addition to tax for the 2008 and 2009 tax years.  We hold that he is liable.  See infra part 2.c.

## FINDINGS OF FACT

Some facts have been stipulated, and they are so found.  Palmer resided in Minnesota when he filed the petition.  Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Eighth Circuit unless the parties stipulate venue in another circuit.  See sec. 7482(b)(1) and (2).

Palmer worked in Minneapolis-St. Paul, Minnesota, until July 2008.

From April to November 2007 Palmer lived in a cabin he owned in Walker, Minnesota.  The cabin is approximately 180 miles north of Minneapolis-St. Paul.

From December 2007 to March 2008 Palmer lived in Blaine, Minnesota, which is approximately 15 miles north of Minneapolis-St. Paul.  Palmer continued to work in Minneapolis-St. Paul during that time.

In April 2008 Palmer moved from Blaine back to his cabin in Walker.  Palmer was still working in Minneapolis-St. Paul at that time.

In July 2008 Palmer began working at Minnesota Home Zone, Inc. ("Minnesota Home Zone"), a manufacturer and retailer of homes and mobile homes that is between the cities of Cass Lake and Bemidji, Minnesota.  Cass Lake

[*4] is approximately 22 miles north of Walker. Bemidji is approximately 16 miles northwest of Cass Lake. When Palmer began working at Minnesota Home Zone, he was still living in his cabin in Walker. The cabin is approximately 50 miles from Minnesota Home Zone.

In August 2008 Palmer married a woman from South Carolina, referred to here as Palmer's wife. She lived with two sons from a prior marriage and with her mother. Palmer and Palmer's wife began planning for her and her family to move from South Carolina to Minnesota.

In October 2008 Palmer bought a new house in Cass Lake. The house was still under construction when he bought it.

In October 2008 Palmer's wife moved from South Carolina to a cabin in Walker owned by Palmer's sister. Palmer's wife was accompanied by her two sons and her mother. As part of his wife's move in October 2008, Palmer paid $3,157.81 to move a portion of his wife's belongings from South Carolina to his sister's cabin. Some of his wife's belongings remained in South Carolina. After his wife's move in October 2008, Palmer continued living in his cabin in Walker. Palmer's wife, her two sons, and her mother lived in Palmer's sister's cabin, which was right next door to Palmer's cabin.

[*5]   In November 2008 Palmer, Palmer's wife, her sons, and her mother moved from the two cabins in Walker to the new house in Cass Lake.

In December 2008 Palmer moved more of his wife's belongings from South Carolina to the house in Cass Lake.  Palmer paid $3,322.12 to move these goods.

In February 2009 Palmer began working a second job, managing a McDonald's restaurant.  For this job Palmer worked primarily in Bemidji.

In July 2009 Palmer stopped working at Minnesota Home Zone.

In August 2009 Palmer stopped working at the McDonald's restaurant.

In September 2009 Palmer moved his wife's remaining belongings from South Carolina to the house in Cass Lake.

In October 2009 Palmer began working for Farm Bureau Life Insurance.

Palmer's wife was not employed at any time during 2008 or 2009.

In 2008 Palmer received $3,541 in taxable wages and $17,975 in taxable nonemployee compensation.  Palmer's 2008 federal-income-tax return was originally due April 15, 2009, but the deadline was extended to October 15, 2009.

In 2009 Palmer received $10,953 in taxable wages and $12,144 in taxable nonemployee compensation.  Palmer's 2009 federal-income-tax return was originally due April 15, 2010, but the deadline was extended to October 15, 2010.

**[\*6]**   Palmer did not file a federal-income-tax return for either the 2008 or the 2009 tax year.  Palmer did not rely on a tax professional for advice regarding his federal income tax for either the 2008 or the 2009 tax year.  The only payments of federal income tax that Palmer made for 2008 or 2009 were $549 of federal income tax withheld from his wages in 2008 and $94 of federal income tax withheld from his wages in 2009.

On October 17, 2011 the IRS prepared a substitute-for-return pursuant to section 6020(b) for Palmer for the 2009 tax year, showing tax of $80,648.  Palmer filed a federal-income-tax return for the 2007 tax year, showing tax of $1,473.  The IRS did not prepare a substitute-for-return for the 2008 tax year.

The case was tried in St. Paul, Minnesota.

OPINION

1.    Moving-Expense Deductions

Palmer contends that he is entitled to deduct the expenses of moving his wife's belongings from South Carolina to Minnesota from three separate moves that took place in October 2008, December 2008, and September 2009, respectively.  The parties have agreed that Palmer paid $3,157.81 for the first move, i.e., from South Carolina to Walker, Minnesota.  The parties have also agreed that Palmer paid $3,322.12 for the second move, i.e., from South Carolina

[*7] to Cass Lake, Minnesota. For the third move, i.e., from South Carolina to Cass Lake, Minnesota, Palmer seeks a deduction of approximately $3,250. The IRS disputes the amount paid for the third move. In addition, the IRS disputes the deductibility of the expenses of any of the three moves. Palmer has the burden of proof regarding all factual issues underlying the deductibility of the moving expenses. See Tax Ct. R. Prac. & Proc. 142(a) (generally imposing burden of proof on taxpayer in Tax Court proceedings); see also sec. 7491(a)(1) (if specific conditions are met--none of which Palmer met--the burden of proof is on the IRS).

Section 217(a) allows a deduction for moving expenses paid or incurred during the taxable year by an individual taxpayer in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work. Section 217(b)(1) defines "moving expenses" as the reasonable expenses: (1) of moving household goods and personal effects from the taxpayer's old residence to the taxpayer's new residence, and (2) of traveling from the taxpayer's old residence to the taxpayer's new residence. The old residence for purposes of section 217 is the taxpayer's principal residence before the taxpayer departed for the taxpayer's new principal place of work. Sec. 1.217-2(b)(8), Income Tax Regs. The new residence for

**[\*8]** purposes of section 217 is the taxpayer's principal residence within the general location of the taxpayer's new principal place of work. Id.

Expenses that qualify as "moving expenses" under section 217(b)(1) but are attributable to individuals other than the taxpayer and are paid or incurred by the taxpayer are deductible only if the expenses satisfy section 217(b)(2). See sec. 1.217-2(b)(10), Income Tax Regs. For such an expense to satisfy section 217(b)(2), the other individual must: (1) be a member of the taxpayer's household, (2) have had a "principal place of abode" at the taxpayer's old residence, and (3) have a "principal place of abode" at the taxpayer's new residence. See sec. 217(b)(2); sec. 1.217-2(b)(10), Income Tax Regs.

No deduction is allowed under section 217 unless the taxpayer's new principal place of work is at least 50 miles farther from the taxpayer's old residence than was the taxpayer's old principal place of work. Sec. 217(c)(1)(A).

The parties have agreed that in evaluating the deductibility of Palmer's expenses to move Palmer's wife's belongings, we should consider that:

(1)   Palmer's old principal place of work was in Minneapolis-St. Paul. (This is where Palmer worked until July 2008.).

[*9] (2) Palmer's new principal place of work is Minnesota Home Zone, which is between Cass Lake and Bemidji.  (Minnesota Home Zone is where Palmer worked from July 2008 to July 2009.).

(3)     Palmer's old residence was in Walker.  (Palmer's cabin is in Walker.  He lived there from April to November 2008.).

(4)     Palmer's new residence is in Cass Lake.  (Cass Lake is the location of the new house into which Palmer moved in November 2008.).

On the basis of the first three agreements, we conclude that Palmer is disqualified by the 50-mile test from deducting any moving expenses.  As explained before, the 50-mile test is met if the taxpayer's new principal place of work is at least 50 miles farther from the taxpayer's old residence than was the taxpayer's old principal place of work.  Id.  Palmer's old residence (Walker) is 180 miles from his old principal place of work (Minneapolis-St. Paul) but only 50 miles from his new principal place of work (between Cass Lake and Bemidji).  His new principal place of work is not farther from his old residence than was his old principal place of work.

Further, Palmer is not entitled to deduct the cost of moving household goods and personal effects from South Carolina.  South Carolina was not his old residence.  Therefore, the expenses he seeks to deduct for moving household

[*10] goods and personal effects from South Carolina are not "moving expenses". See sec. 217(b)(1) (defining "moving expenses" as the reasonable expenses "of moving household goods and personal effects from the former [old] residence to the new residence" and "of traveling (including lodging) from the former [old] residence to the new place of residence").

Additionally, the expenses Palmer seeks to deduct are "attributable" to Palmer's wife. It was her belongings that were moved, not his. Therefore, under section 217(b)(2) Palmer's wife must have had a "principal place of abode" in Palmer's old residence. Because we hold that the expenses in question are not deductible for other reasons, we need not resolve whether Palmer's wife had a "principal place of abode" in Palmer's old residence of Walker. See id. Similarly, we need not resolve whether the expenses of moving Palmer's wife's belongings were paid in connection with Palmer's commencement of work at his new principal place of work. See sec. 217(a).

We hold that the expenses that Palmer paid to move his wife's belongings are not deductible.

2.      Additions to Tax

The IRS bears the burden of production for additions to tax determined under sections 6651(a)(1) and (2) and 6654(a). See sec. 7491(c). The IRS

**[\*11]** satisfies its burden of production by producing sufficient evidence establishing that it is appropriate to impose the relevant addition to tax. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the IRS satisfies its burden of production, the burden of proof is on the taxpayer to show that imposing the relevant addition to tax is improper. See id. at 447, 449.

    a.     Section-6651(a)(1) Addition to Tax for Failure To Timely File Tax Returns

The IRS determined that Palmer is liable for the section-6651(a)(1) addition to tax for the 2008 and 2009 tax years. Section 6651(a)(1) imposes an addition to tax for failure to file a tax return by its filing deadline (determined by taking into account any extensions of that deadline) unless the taxpayer can establish that the failure to file is due to reasonable cause and not due to willful neglect.

The IRS satisfies its burden of production under section 7491(c) for the section-6651(a)(1) addition to tax by producing sufficient evidence to establish that the taxpayer failed to timely file a required federal-income-tax return. See Wheeler v. Commissioner, 127 T.C. 200, 207-208 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Higbee v. Commissioner, 116 T.C. at 447. The IRS does not bear the burden of proof for the "reasonable cause" exception to the section-6651(a)(1) addition to tax. See Higbee v. Commissioner, 116 T.C. at 447.

**[*12]** The section-6651(a)(1) addition to tax is 5% of the amount required to be shown as tax on the return for each month the failure to file continues, not to exceed 25% in the aggregate. Sec. 6651(a)(1), (b)(1).[3]

Palmer was required to file federal-income-tax returns for both 2008 and 2009.[4] Palmer was originally required to file his 2008 federal-income-tax return by April 15, 2009, but this deadline was extended to October 15, 2009. Palmer was originally required to file his 2009 federal-income-tax return by April 15, 2010, but this deadline was extended to October 15, 2010. Palmer has stipulated that he did not file a federal-income-tax return for either 2008 or 2009. This is sufficient to satisfy the IRS's burden of producing evidence that imposing the addition to tax under section 6651(a)(1) is appropriate for the 2008 and 2009 tax years. See, e.g., Wheeler v. Commissioner, 127 T.C. at 207-208. Consequently,

---

[3]The amount required to be shown as tax on the return (which forms the basis of the sec.-6651(a)(1) addition to tax) is reduced by certain payments and credits, including the amount of wages withheld for federal income tax. Sec. 6651(b)(1); see sec. 31(a)(1). Thus, in its calculations in the notices of deficiency issued to Palmer for 2008 and 2009, the IRS reduced the amounts required to be shown as tax on the returns for 2008 and 2009 by the amounts of wages withheld for each year.

[4]In 2008 Palmer received $3,541 in taxable wages and $17,975 in nonemployee compensation. In 2009 Palmer received $10,953 in taxable wages and $17,975 in nonemployee compensation. Accordingly, Palmer earned amounts sufficient to require him to file federal-income-tax returns for the 2008 and 2009 tax years. See sec. 1.6012-1(a), Income Tax Regs.

[*13] Palmer is liable for the section-6651(a)(1) addition to tax for the 2008 and 2009 tax years unless he comes forward with evidence sufficient to persuade the Court that he had reasonable cause for his failure to file his 2008 and 2009 returns and that his failure to file his 2008 and 2009 returns was not due to willful neglect. See sec. 6651(a)(1); Higbee v. Commissioner, 116 T.C. at 447.

Reasonable cause excusing a failure to timely file exists if the taxpayer exercised ordinary business care and prudence but nevertheless was unable to file the return by the deadline. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure or reckless indifference. United States v. Boyle, 469 U.S. 241, 245 (1985). Palmer contends that his failure to file his federal-income-tax returns was due to reasonable cause and not due to willful neglect for the following reasons.

(1)    Palmer alleges that he could not access his 2007 tax records and that these records were necessary for him to file his 2008 return. Palmer alleges that his 2007 records were in outside storage units and that the doors to these units were frozen over until the spring of 2009. However, because of an extension, Palmer's 2008 return was not due until October 15, 2009. Any ice would have melted before October 15, 2009. Thus, the ice is not a reasonable cause for Palmer's failure to file a tax return on or before

[*14] October 15, 2009. See Stevens Bros. Found. v. Commissioner, 39 T.C. 93, 130 (1962) ("[A]n acceptable reason for failure to file a return will excuse such failure only so long as the reason remains valid."), aff'd in part, rev'd in part on another issue, 324 F.2d 633 (8th Cir. 1963). Palmer also alleges that he was involved in an ongoing dispute with the owner of the storage units. However, the record does not show that the dispute prevented Palmer from accessing the storage units or that Palmer even asked to access the units. Furthermore, Palmer should have timely filed his return with the best available information, and later, if necessary, filed an amended return. See Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982). Thus, Palmer's alleged inability to access his 2007 records is not reasonable cause for his failure to file his 2008 return.

(2)  Palmer alleges that he could not obtain his wife's records and for that reason he could not file a joint return for 2008 with his wife. However, Palmer could have filed a return with the best available information, and later, if necessary, filed an amended return. Or he could have filed a separate return, which would have obviated the need for records regarding his wife's income. See Belk v. Commissioner, 93 T.C. 434, 447 (1989). Thus, any

[*15] inability to obtain his wife's records is not reasonable cause for his failure to file his 2008 return.

(3)     Palmer alleges that he was working exceedingly long hours.  However, Palmer's heavy workload is not reasonable cause for his failure to file a return.  See Crocker v. Commissioner, 92 T.C. 899, 913 (1989) (citing Odend'hal v. Commissioner, 80 T.C. 588, 618 (1983), aff'd on this issue, remanded on other grounds, 748 F.2d 908 (4th Cir. 1984)).  If Palmer had exercised ordinary business care and prudence, he would not have taken on a workload that would have interfered with his ability to fulfill his legal obligation to file his federal-income-tax return.  See id. (citing Dustin v. Commissioner, 53 T.C. 491, 507 (1969), aff'd, 467 F.2d 47 (9th Cir. 1972)).  Palmer's heavy workload is not reasonable cause for his failure to file his 2008 return.

(4)     Palmer alleges that he started having domestic problems with his wife in August 2011.  But this was long after the due dates for his 2008 and 2009 returns (October 15, 2009 and 2010, respectively).  Therefore these problems could not have caused his failure to file his 2008 and 2009 returns.  See Estate of Hinz v. Commissioner, T.C. Memo. 2000-6, 79 T.C.M. (CCH) 1289, 1305 (2000) (holding that the estate's failure to timely file the return

**[\*16]** was not caused by the estate lawyer's erroneous advice about the due date when: (1) estate-tax return was due August 4, 1993, (2) shortly before February 4, 1994, long after the due date had passed, the estate's lawyer erroneously advised the executor that the due date was February 4, 1994, and (3) the executor filed the return on February 4, 1994).

(5)    Finally, Palmer alleges that he could not file his 2009 return because he needed information from his 2008 return and therefore he needed to file his 2008 return before filing his 2009 return. But as previously discussed, we do not find that Palmer had reasonable cause for his failure to file his 2008 return. Additionally, the lack of information relating to 2008 is no excuse for failing to file his 2009 return. He could have filed a return for 2009 on or before the deadline with the best available information, and later, if necessary, filed an amended return. See Estate of Vriniotis v. Commissioner, 79 T.C. at 311. The unavailability of Palmer's 2008 return is not reasonable cause for his failure to file his 2009 return.

Palmer has not proven that he had reasonable cause for his failure to file either his 2008 or 2009 federal-income-tax return.

**[\*17]** Accordingly, we hold that Palmer is liable for the section-6651(a)(1) addition to tax for the 2008[5] and 2009 tax years.

      b.      <u>Section-6651(a)(2) Addition to Tax for Failure To Timely Pay Tax</u>

The IRS also determined that Palmer is liable for the section-6651(a)(2) addition to tax for the 2009 tax year. Section 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as tax on a return on or before the due date[6] unless the taxpayer can establish that the failure is due to reasonable cause and not due to willful neglect. Section 6651(a)(2) provides that the addition to tax is calculated as 0.5% of the amount shown as tax on the tax return, with an additional 0.5% for each additional month or fraction thereof during which the failure to pay continues, up to a maximum of 25%. Section 6651(b)(2) provides that the amount of tax shown on the return shall, for purposes of computing the addition for any month, be reduced by the amount of any part of the tax paid on or before the beginning of the month and by the amount of any credit against the tax

---

[5]The IRS conceded that Palmer is not liable for the sec.-6651(a)(2) addition to tax for 2008. Accordingly, sec.-6651(c)(1), which is discussed <u>infra</u> note 9, does not reduce the sec.-6651(a)(1) addition to tax for the 2008 tax year.

[6]Unless extended, <u>see</u> sec. 6161(a), the due date of a tax payment is generally the date on which the return is required to be filed. <u>See</u> sec. 6151(a). Palmer did not receive an extension of time to pay the tax. Extensions of time to file a return do not extend the due date for payment. <u>See</u> <u>id.</u> Palmer's tax payment for the 2009 tax year was due on April 15, 2010. <u>See</u> sec. 6151.

[*18] which may be claimed on the return. Section 6651(c)(2) provides that if the amount required to be shown as tax on the return is less than the actual amount shown as tax on the return, then both section 6651(a)(2) and (b)(2) are applied by substituting this lower amount.

i. Amount That Palmer Failed To Pay

For purposes of section 6651(a)(2), a taxpayer's return includes either a return filed by the taxpayer or a substitute-for-return prepared by the IRS under section 6020(b). See sec. 6651(g)(2); Cabirac v. Commissioner, 120 T.C. 163, 170 (2003). Palmer did not file a federal-income-tax return for the 2009 tax year. However, the IRS prepared a substitute-for-return for Palmer for the 2009 tax year. The IRS introduced this substitute-for-return into evidence, and it satisfies the requirements of section 6020(b).[7] Therefore, the substitute-for-return qualifies as Palmer's 2009 return for purposes of section 6651(a)(2). See sec. 6651(g)(2); Cabirac v. Commissioner, 120 T.C. at 170. The amount shown as tax on the substitute-for-return prepared for Palmer for the 2009 tax year was $80,648.

---

[7]A document or set of documents signed by an authorized IRS official or employee is a return for purposes of sec. 6020(b) if the document(s): (1) identifies the taxpayer by name and taxpayer-identification number; (2) contains sufficient information to compute the taxpayer's tax liability; and (3) purports to be a return. Sec. 301.6020-1(b)(2), Proced. & Admin. Regs.

[*19] Because of a concession made by the IRS,[8] the correct amount of tax is less than the amount originally determined by the IRS in the notice of deficiency and shown as tax on the substitute-for-return. Accordingly, the correct amount of tax, instead of the actual amount shown as tax on the substitute-for-return, is used to calculate the section-6651(a)(2) addition to tax. See sec. 6651(c)(2). The correct amount of tax will be determined by the Court after the parties submit computations under Tax Court Rule of Practice & Procedure 155. The only payment of the tax Palmer made or credit against the tax that he can claim is the $94 withheld from his wages. Amounts withheld from wages are allowable as a credit against tax under section 31(a)(1). If the correct amount of tax is a positive number (after the $94 reduction required by section 6651(b)(2)), then the IRS has satisfied its burden of production under section 7491(c) that it is appropriate to impose the section-6651(a)(2) addition to tax. See James v. Commissioner, T.C. Memo. 1980-99, 40 T.C.M. (CCH) 45, 55 (1980) ("Consequently, if there is no amount required to be shown as tax on the return (as in some cases of excess withholdings, estimated tax payments, or net operating loss carryovers), then there can be no penalty. * * * This is not the case here. The corrected tax liability

---

[8]The IRS conceded that Palmer was not required to recognize gain on the sale of real estate.

[*20] exceeds the combined withholdings in both taxable years 1969 and 1970. Such excess is the amount required to be shown as tax on the return and subject to the section 6651(a)(1) penalty." (citation omitted.)); cf. Mischel v. Commissioner, T.C. Memo. 1997-350, 74 T.C.M. (CCH) 253, 257 (1997).

ii.      Reasonable Cause

The IRS does not bear the burden of proof for the "reasonable cause" exception to the section-6651(a)(2) addition to tax. Higbee v. Commissioner, 116 T.C. at 447. Palmer is required to come forward with evidence sufficient to persuade the Court that he had reasonable cause for his failure to pay the correct amount of tax for 2009 (after the $94 reduction) and that his failure to do so was not due to willful neglect. See id. Reasonable cause excusing a failure to pay exists if the taxpayer exercised ordinary business care and prudence in providing for payment of the tax and was nevertheless either unable to pay the tax or would have suffered an undue hardship if he or she had paid the tax on the due date. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see also Downing v. Commissioner, 118 T.C. 22, 28 (2002) (citing section 301.6651-1(c)(1), Proced. & Admin. Regs.). An "undue hardship" means more than an inconvenience; rather, an "undue hardship" would exist if the taxpayer would suffer a substantial financial loss if he or she had to make the tax payment on its due date. See sec. 1.6161-1(b), Income

[*21] Tax Regs. Palmer did not introduce any evidence that he was unable to pay the tax or that he would have suffered undue hardship if he had paid the tax on the due date. Thus, Palmer has not shown that his failure to pay the correct amount of tax for 2009 was due to reasonable cause and not due to willful neglect.

Accordingly, we hold that Palmer is liable for the section-6651(a)(2) addition to tax for the 2009 tax year,[9] subject to post-opinion computations under Tax Court Rule of Practice and Procedure 155 confirming that the correct amount of tax for 2009 is a positive number (after application of section 6651(b)(2)).

c. Section-6654(a) Addition to Tax for Failure To Pay Estimated Tax

The IRS also determined that Palmer is liable for the section-6654(a) addition to tax for the 2008 and 2009 tax years. Section 6654(a) imposes an addition to tax on an individual taxpayer who underpays at least one of four required installments of estimated tax. Sec. 6654(a), (b), and (c). Each required installment is equal to 25% of the "required annual payment". Sec. 6654(d)(1)(A). The required annual payment is equal to the lesser of: (1) 90% of the tax shown on the individual's return for the tax year in question (or, if no return is filed, 90%

---

[9]We hold that Palmer is liable for both the sec.-6651(a)(1) addition to tax, see supra part 2.a., and the sec.-6651(a)(2) addition to tax for the 2009 tax year. The amount of the sec.-6651(a)(1) addition to tax must be reduced by the amount of the sec.-6651(a)(2) addition to tax for the months for which both additions to tax apply. Sec. 6651(c)(1).

**[*22]** of the correct tax for such year), or (2) if the individual filed a return for the immediately preceding tax year, 100% of the tax shown on that return. Sec. 6654(d)(1)(B). The due dates of the required installments for a calendar-year taxpayer like Palmer are April 15, June 15, and September 15 of the calendar year in question and January 15 of the following year. Sec. 6654(c)(2).

The section-6654(a) addition to tax is determined by applying the underpayment rate established under section 6621 to the amount of the underpayment for the period of the underpayment. Sec. 6654(a)(1). The amount of the underpayment is the excess of the required installment over the amount, if any, of the installment paid on or before the due date for the installment. Sec. 6654(b)(1). The period of the underpayment runs from the due date for the installment to the earlier of the 15th day of the 4th month following the close of the taxable year (i.e., April 15, 2009, for Palmer's 2008 tax year and April 15, 2010, for Palmer's 2009 tax year) or for any portion of the underpayment, the date on which such portion is paid. Sec. 6654(b)(2).

For purposes of section 6654, wage-withholding credits are treated as payments of estimated tax. See sec. 6654(g)(1). The amount of wages withheld for each tax year is treated as a payment of estimated tax for that year, and one-fourth of this amount is treated as paid on each of the four estimated-tax required-

[*23] installment due dates for that tax year, unless the taxpayer establishes the dates on which all amounts were actually withheld. See id.

To satisfy its burden of production under section 7491(c) for the section-6654(a) addition to tax, the IRS must produce evidence establishing that the taxpayer had a "required annual payment" as defined in section 6654(d)(1)(B). Wheeler v. Commissioner, 127 T.C. at 211-212.

For the 2008 tax year the record shows that Palmer had a "required annual payment". He filed a federal-income-tax return for the 2007 tax year. His return for 2007 showed a tax of $1,473. He did not file a federal-income-tax return for the 2008 tax year. Therefore, his "required annual payment" for 2008 is equal to the lesser of: (1) 90% of his correct tax for 2008, see sec. 6654(d)(1)(B)(i), or (2) 100% of the tax shown on his 2007 return (i.e., $1,473), see sec. 6654(d)(1)(B)(ii). The first amount--90% of his correct tax for 2008--will be determined in post-opinion computations under Tax Court Rule of Practice and Procedure 155. Each of the four required installments is one-fourth of the "required annual payment" amount that will be derived from these computations. See sec. 6654(d)(1)(A). Palmer had $549 of federal income tax withheld from his wages in 2008. He has not established the dates on which these amounts were actually withheld. Accordingly, one-fourth of the $549, or $137.25, is deemed to be a payment of

[*24] estimated tax paid on each of the four due dates of the required installments for the 2008 tax year. See sec. 6654(g)(1). Palmer made no other payments of estimated tax for the 2008 tax year. The IRS has satisfied its burden of producing evidence that imposing the section 6654(a) addition to tax is appropriate for the 2008 tax year if post-opinion computations confirm that the $137.25 deemed payment is less than each required installment. See McLaine v. Commissioner, 138 T.C. 228, 249 (2012) ("Because (1) respondent's Form 4340 for petitioner for 1999 shows no payments of tax for 1999 until July 17 and October 22, 2001, and (2) petitioner showed a substantial tax liability on his prior year (1998) return (facts establishing that petitioner had a 'required annual payment' for 1999 within the meaning of section 6654(d)(1)(B)), we find that respondent has satisfied his burden of production under section 7491(c).").

For the 2009 tax year the record shows that Palmer had a "required annual payment". Palmer did not file a return for 2008 or 2009. Palmer's "required annual payment" for 2009 was therefore 90% of his correct tax for 2009. See sec. 6654(d)(1)(B)(i) (flush language). This amount will also be determined in post-opinion computations under Tax Court Rule of Practice and Procedure 155. Each of the four required installments is one-fourth of the "required annual payment" amount. See sec. 6654(d)(1)(A). Palmer had $94 of federal income tax withheld

**[\*25]** from his wages in 2009. Palmer has not established the dates on which these amounts were actually withheld. Accordingly, one-fourth of the $94, or $23.50, is deemed to be a payment of estimated tax paid on each of the four due dates for the 2009 tax year. See sec. 6654(g)(1). Palmer made no other payments of estimated tax for 2009. The IRS has satisfied its burden of producing evidence that imposing the section 6654(a) addition to tax is appropriate for the 2009 tax year if post-opinion computations confirm that the $23.50 deemed payment is less than each required installment. See McLaine v. Commissioner, 138 T.C. at 249.

The section-6654(a) addition to tax is mandatory unless the taxpayer establishes that one of the exceptions listed in section 6654(e) applies. See Recklitis v. Commissioner, 91 T.C. 874, 913 (1988) (citing Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980)). There is no general exception to the section-6654(a) addition to tax relating to reasonable cause and lack of willful neglect. See Grosshandler v. Commissioner, 75 T.C. at 21 (citing Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960)); cf. sec. 6654(e)(3)(B)(ii). Palmer does not contend, nor does the record show, that any of the exceptions under section 6654(e) applies.

**[\*26]** Accordingly, we hold that Palmer is liable for the section-6654(a) addition to tax for the 2008 and 2009 tax years, subject to post-opinion computations under Tax Court Rule of Practice and Procedure 155.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Tax Court Rule of Practice and</u>

<u>Procedure 155</u>.